**Jesse SPARKS, Petitioner,**

v.

**Michael J. GAINES, et al., Respondents.**

**No. CIV 00–2432 TFH.**

United States District Court, District of Columbia.

May 17, 2001.

---

Daniel Miller Cisin, Washington, DC, for Petitioner.

Olinda Moyd, Washington, DC, for Respondents.

### MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Pending before the Court is Mr. Sparks's Petition for Writ of Mandamus or In the Alternative for Writ of Habeas Corpus. Although he has advanced (and forfeited) several arguments, his claims can be distilled into a single issue: whether the U.S. Parole Commission must provide the procedural protections of a parole revocation hearing in deciding whether to re-parole a D.C.Code prisoner revoked by the D.C. Board of Parole on administrative grounds if the U.S. Commission considers a criminal charge upon which the D.C. Board made no findings. Upon careful consideration of Sparks's petition, the opposition and reply thereto, a hearing held on February 13, 2001, subsequent additional briefing, and the entire record herein, the Court answers the question in the negative and accordingly will deny Sparks's petition.

## I. BACKGROUND

The petitioner, Jesse Sparks, was sentenced in D.C. Superior Court in 1989 for five to fifteen years for manslaughter and carrying a pistol without a license. After serving part of the sentence, Sparks was granted parole on January 28, 1993 and released to the community. However, on October 16, 1997, Sparks's parole officer reported that Sparks had violated his conditions of parole because he been indicted for aggravated assault while armed and for possession of a firearm during a crime of violence and because he had failed to report to the officer. The parole officer recommended to the D.C. Board of Parole ("Board") that a warrant issue for Sparks's arrest. The Board issued the warrant, and Sparks was arrested on June 2, 1998.

Sparks had a parole revocation hearing with the Board on June 16, 1998, at which the Board considered both the criminal charge and his administrative failure to report to his parole officer. The Board found an administrative violation for Sparks's failure to report, but it made "no finding" about the criminal charge because it was pending in D.C. Superior Court. *See* Respondents' Ex. F at 5–6. It therefore did not formally revoke Sparks's parole at that time. Rather, the D.C. Board continued the parole revocation hearing

until July 30, 1998 so that it could obtain additional evidence.

On July 2, 1998, the Assistant United States Attorney ("AUSA") prosecuting the criminal violations in Superior Court wrote to the Board, explaining the details of the criminal assault charge. According to the AUSA, the petitioner and his brother, Elias Sparks, brutally pistol-whipped their neighbor, John Garner. *See* Respondents' Ex. H. In her letter, the AUSA explained how Elias Sparks had been tried and convicted by a jury of aggravated assault while armed and possession of a firearm during a crime of violence for the assault on Garner, and she provided a transcript of that trial at which the victim implicated Jesse Sparks in the crime. However, Jesse Sparks was a fugitive at the time of his brother's trial. Executing a search warrant, police were unable to find the petitioner but did recover powder cocaine and gun ammunition from his residence. By the time the police caught up with Sparks in February 1998, the victim could not be found to testify against him.

On July 24, 1998, the charges against Sparks were dismissed in D.C. Superior Court for want of prosecution, and the Board conducted record review of the parole revocation charges. *See* Respondents' Ex. I. Subsequently, on July 30, 1998, the Board formally revoked Sparks's parole for noncriminal violations for his failure to report to his parole officer and set down a reparole consideration date of March 1, 1999. *See* Petitioner's Ex. C; Respondents' Ex. J ("Revoke parole for noncriminal violation(s); consider for reparole by 03/01/1999.").

On August 5, 1998, the U.S. Parole Commission ("Commission") assumed parole authority for D.C. prisoners. *See* D.C.Code § 24–1231. On March 2, 1999, a Commission case analyst contacted the AUSA involved in the criminal assault case

and requested information about the case's dismissal. The AUSA responded on May 10, 1999 that the case was dismissed because the government could not locate the victim of the offense, and she noted that no criminal charges had been filed against Sparks in connection with the drugs and ammunition from his residence. Twice during May 1999, Sparks's former attorney, Eric Rosenberg, forwarded letters to the Commission inquiring about why he had not yet received his parole reconsideration hearing as ordered to be held by the Board by March 1, 1999. On May 26, 1999, Sparks filed a petition for habeas corpus in D.C. Superior Court, which was dismissed on June 28, 1999. *See* Petitioner's Ex. H.

On September 7, 1999, the Commission held hearings at the facility holding Sparks. Concluding that there was insufficient information to complete the hearing, however, the Commission continued the hearing. *See* Respondents' Ex. M at 2. The examiner stated that a letter in the file from the AUSA dated October 5, 1998 indicated that Mr. Garner's attorney had advised the AUSA that Garner (the victim of the criminal assault) had stated that his previous statements about the 1996 assault were a lie. *See id.* at 2. The examiner then recommended that the Commission defer a decision pending receipt of more information from the AUSA. On October 8, 1999, the Commission issued an order deferring the decision of the Commission for 90 days pending receipt of the information from the AUSA. *See* Respondents' Ex. N.

On November 1, 1999, the Commission's Case Operations Administrator wrote to the AUSA inquiring about the alleged victim statement and the dismissal of the case. On December 22, 1999, the AUSA replied, confirming that the victim had recanted his testimony, but noting that the U.S. Attorney's office continued to believe

that Mr. Garner correctly identified the Sparks brothers as his assailants on numerous occasions after the assault and that Jesse Sparks was guilty of aggravated assault. *See* Respondents' Ex. P.

On May 3, 2000, the Commission held a hearing, but again continued it due to a lack of information. On August 24, 2000, the Commission held another hearing, and this time discussed the assault on Garner, the AUSA's letter, Garner's recantation, and the drugs recovered from Sparks's residence. *See* Respondents' Ex. R. Again, however, the examiner recommended that the hearing be continued to obtain more information from the AUSA about the drugs and ammunition recovered from the residence during the execution of the search warrant. *See id.* at 2.

However, an Executive Hearing Examiner disagreed with the recommendation to obtain more information about the drugs and ammunition and proceeded to make findings with regard to the outstanding criminal assault charge against Sparks. *See id.* at 2–3. She believed that the evidence in the record supported a finding by the preponderance that Sparks had been involved in the assault on Mr. Garner. She then applied the reparole guidelines and determined that Sparks's range was sixty-four to ninety-two months of time to be served before release on reparole, and she recommended that Sparks serve ninety-two months. Accordingly, on September 26, 2000, the Commission ordered that Sparks be continued to a presumptive parole on October 23, 2005 after serving ninety-two months. On October 13, 2000, the Commission gave notice of its decision.

## II. DISCUSSION

As clarified at the hearing held on February 13, 2001 and through subsequent briefing, Sparks advances two arguments in this case. First, he argues that he is entitled to a reparole hearing because of the Board's July 30, 1998 order to reconsider Sparks's parole by March 1, 1999. *See* 28 C.F.R. § 2.90 (2000) ("Any order entered by the Board of Parole of the District of Columbia shall be accorded the status of an order of the Parole Commission unless duly reconsidered and changed by the Commission at a regularly scheduled hearing."). Sparks contends that the Commission has failed to hold such a hearing. Moreover, contends Sparks, once the Commission holds the proper hearing, it must release him. The regulations governing the reparole decisions concerning D.C.Code prisoners state that "[i]f the prisoner is not serving a new, parolable D.C.Code sentence, the Commission's decision to grant or deny reparole on the parole violation term shall be made by reference to the reparole guidelines at § 2.21." 28 C.F.R. § 2.81. In turn, section 2.21 states that "[i]f revocation is based upon administrative violation(s) only, grade the behavior as if a Category One offense under § 2.20." 28 C.F.R. § 2.21(a)(1). Because the Board revoked Sparks's parole only for a failure to report to the parole officer—an administrative violation—Sparks contends that he should have received a Category One offense level and a corresponding reparole guideline range of zero to six months. And because he has already served well over six months, he should be released immediately. But by rating the behavior for which Sparks was not revoked—the assault—and placing him in Category Seven with ninety-two months to serve, the Commission committed clear error and abuse of discretion, for which the Commission's decision can, and should, be reversed. *See Stevens v. Quick*, 678 A.2d 28, 31 (D.C.1996) (holding that on a petition for a writ of habeas corpus, the court does not review the merits, "but only whether the petitioner has

been deprived of his legal rights by the manner in which the revocation hearing was conducted, in order to determine whether there has been an abuse of discretion").

Second, Sparks argues that by considering the assault charge, the U.S. Commission in effect conducted a second revocation hearing, which it may not do.[1] Even if the Commission could hold such a hearing, Sparks asserts, it must afford him the full panoply of regulatory and due process protections under both *Morrissey v. Brewer*, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and 28 C.F.R. §§ 2.101–.105, which it did not provide in this case.[2] Rather than conducting such a

---

1. Sparks's position on this issue has been capricious. In his original briefs, Sparks argued that "the U.S. Parole Commission does not have the authority to conduct a second revocation hearing.... In the instant case, Mr. Sparks's parole had already been revoked by the D.C. Board of Parole and the Commission could not, therefore, conduct another revocation hearing on this matter." Pet. Resp. to U.S. Opp. at 7, 10. At the hearing, however, Sparks's counsel took a different view:

> Ms. Moyd: On you last point, whether or not they can revisit the 1996 charges—
> The Court: Right.
> Ms. Moyd:—we believe that they can. We also believe that it has to be done in accordance with their rules and regulations.... So, we do point out that, yes, the Parole Commission may, if they choose, bring up those 1996 charges.... [B]ut, if they do so, they must do so in compliance with the rules and regulations that govern regulation hearings. That means that all of the constitutional, procedural safeguards that are put in place outlined in *Morrissey* ... come into play.
>
> \* \* \* \* \* \*
>
> The Court:—as I understood when you started off the discussion, that you don't deny or don't argue with the fact that the U.S. Parole Commission could go back and revisit that no finding.
> Ms. Moyd: There is nothing in the regulations that prohibits them from doing that.
> The Court: Okay.
> Ms. Moyd: There are mandates in the regulation that outline how they have to do that.

2/12/01 Tr. at 2–3, 17. In other words, Sparks argued at the hearing that the Commission, in fact, had the authority to consider the assault charge under 28 C.F.R. § 2.19, and that if it does so, it *must* conduct a revocation hearing, *see* 28 C.F.R. § 2.21(a)(2),

with all its accompanying regulatory and due process protections under *Morrissey v. Brewer*, 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and the pertinent federal regulations, 28 C.F.R. §§ 2.101–.105. In a brief filed after the hearing, however, Sparks has come full circle: "Petitioner continues to argue that the U.S. Parole Commission cannot conduct a second parole revocation hearing based on issues already considered by the D.C. Board of Parole." Pet. Resp. to Court Or. at 2–3 (citing Pet. Resp. to U.S. Opp. at 7).

2. In *Morrissey*, the Supreme Court included the following in the minimum requirements of due process in the parole revocation context:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 489. The regulations provide similar protections. *See, e.g.*, 28 C.F.R. § 2.98(f) (requiring a warrant application must accompany a warrant, stating the charges against the parolee); 28 C.F.R. § 2.101(c) (requiring a preliminary interview with officer who shall review the violation charges, apprise the parolee of the evidence against him, and obtain a response from the parolee about each charge); 28 C.F.R. § 2.102(b) (requiring that "parolee shall also be given a local revocation hearing if he admits (or has been convicted of) one or more charged violations, but denies at least one

hearing, in Sparks's view, the Commission merely held several interviews through which it inquired about the assault charge but continued the meeting to obtain further information.

Sparks's theory is untenable. Under it, the U.S. Commission would be prohibited entirely from considering an unresolved charge that he assaulted another individual. That is, Sparks believes that the Commission may neither stray outside of section 2.21(a)(1) (under which the Commission may consider *only* the administrative violation for which the Board revoked him) nor conduct a second revocation hearing to address the assault charge. But such a theory is simply irreconcilable with the Commission's obligation to consider "whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether release on parole is consistent with public safety." *White v. Hyman,* 647 A.2d 1175, 1179 (1994) (citing D.C.Code § 24–204(a)).

However, if the Court amends the petitioner's theory to permit the Commission to consider the assault charge but require it to do so within the parameters of a full-fledged *Morrissey* revocation hearing, as the petitioner ostensibly advanced at hearing, then it at least appears to rest upon a technically plausible reading of the pertinent regulations. That is, section 2.21(a)(2) requires the Commission to consider new criminal conduct at a revocation hearing:

> If a finding is made that the prisoner has engaged in behavior constituting new criminal conduct, the appropriate severity rating for the new criminal be-

havior shall be calculated. *New criminal conduct may be determined either by a new federal, state, or local conviction or by an independent finding by the Commission at revocation hearing.* As violations may be for state or local offenses, the appropriate severity level may be determined by analogy with listed federal offense behaviors.

28 C.F.R. § 2.21(a)(2).

The Commission rejoins that in the case of D.C.Code prisoners, it is not bound by the fact-finding procedures of section 2.21(a)(2); rather, it is constrained only by the guidelines of section 2.21(a)(1) and (b) and the fact-finding procedures of section 2.72. *See* 28 C.F.R. § 2.81 ("Each decision to grant or deny reparole shall be made by reference to the Commission's reparole *guidelines* at § 2.21 .... Reparole hearings shall be conducted according to the *procedures* set forth in § 2.72.") (emphasis added). In conducting its hearings concerning Sparks, argues the Commission, it fully complied with the procedures of section 2.72 and with section 2.19(c), which addresses information considered in "making parole or reparole determination[s]":

> The Commission may take into account *any substantial information available to it* in establishing the prisoner's offense severity rating, salient factor score, *and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond.* If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the prepon-

---

unadjudicated charge that may be determinative of the Commission's decision regarding revocation and/or reparole, and requests the presence of one or more adverse witnesses regarding that contested charge"); 28 C.F.R. § 2.103(b) (permitting parolee at local revocation hearing to present voluntary witnesses

and documentary evidence on his behalf and seek compulsory attendance of adverse witnesses for cross-examination); 28 C.F.R. § 2.103(d) (stating that "[a]ll evidence upon which the finding of violation may be based shall be disclosed to the alleged violator at or before the revocation hearing").

derance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability.

28 C.F.R. § 2.19(c) (emphasis added).

■ In this case, the Court finds that the Commission has provided Sparks with the requisite reparole hearing.[3] When the Commission considered Sparks's unresolved assault charge, it was not required to conduct a second revocation hearing under section 2.21(a)(2) and correctly addressed the charge under section 2.19(c). As represented by the government, section 2.21 was originally promulgated for federal prisoner reparole decisions, which have been made at revocation hearings held by the Commission.[4] Section 2.21 therefore provides guidelines for a reparole decision to be made at the same time a prisoner is revoked. It assumes that the prisoner has not already been revoked and accordingly provides the due process protections of a revocation hearing when new criminal conduct is to be determined independently by the Commission without a conviction by local, state, or federal court. The Court therefore concludes that while the pertinent regulations are needlessly ambiguous,[5] the Commission's reference in section

2.81 to section 2.21 does not require it to conduct another revocation hearing for a D.C.Code prisoner when it considers an unresolved criminal charge after the D.C. Board has already revoked him on an administrative violation while making no finding on the criminal conduct. Because the Board properly revoked Sparks on an administrative violation of his parole without making findings on the criminal assault charge, Sparks was stripped of his liberty interest in parole, and the Commission could consider the unresolved criminal charge under section 2.19(c) without violating due process or the Commission's regulations. *Cf. Greenholtz v. Inmates of Nebraska Penal Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (stating that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.'") (quoting *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).

The Court also finds, and the petitioner

---

**3.** In addition, the fact that the Commission did not complete the reconsideration hearing by March 1, 1999 does not give Sparks a colorable claim here. Rather, delays in seeking additional documentation and information do not give rise to due process problems. *See, e.g., Brandon v. D.C. Board of Parole,* 823 F.2d 644, 649 (D.C.Cir.1987) (holding that "the procedures adopted by the state to guide its parole release determinations are not themselves liberty interests entitled to constitutional due process protection"); *Morgan v. D.C.,* 618 F.Supp. 754, 756 (D.D.C.1985) ("[F]ederal authorities may make parole decisions about District of Columbia offenders committed to them.... Therefore, the Com-

mission's decision to disregard a parole hearing originally set by the Board prior to the plaintiff's transfer into the federal system and under its authority was fully within its power once the plaintiff fell within the Commission's jurisdiction.").

**4.** By contrast, the D.C. Board of Parole made reparole decisions at reconsideration hearings held *after* the prisoner has been revoked.

**5.** As evidenced by the confusion between the parties in this case, clarity in the applicable regulations is needed.

apparently does not dispute,[6] that the Commission complied with the reparole hearing procedures set forth in sections 2.72 and 2.19(c) in this case. The Commission had information implicating Sparks's involvement in the assault against Garner. *See* Def's Ex. H. It discussed this with Sparks at the hearing held on September 7, 1999. *See* Def's Ex. M at 1–2 (memorandum of Examiner Kathleen A. Pinner stating that she "spent considerable time discussing with [Sparks] the information in the pre-review concerning the April, 1997 indictment for aggravated assault while armed and possession of a firearm during a crime"). But because the hearing examiner wanted more information about Garner's recantations, she continued the matter. The Commission held another hearing after that and continued it as well. It then held a hearing on August 24, 2000 at which Sparks was apprised of the criminal charge at issue and given the opportunity to respond. Subsequently, the Executive Hearing Examiner made a finding by a preponderance of the evidence that Sparks had committed the assault, which the Commission adopted in rendering its decision. While the hearings conducted by the D.C. Board and the U.S. Commission were disjointed, it appears that the Commission ultimately apprised Sparks of the fact that it was considering the 1996 assault charge, provided him with relevant transcripts and documents such as the AUSA's letter, and provided him with several opportunities to discuss the charge with the hearing examiners. Thus, Sparks has failed to demonstrate any specific deprivation of his procedural rights for a reparole hearing provided under sections 2.72 or 2.19.

---

**6.** Rather than challenging the *reparole* procedures provided in this case, as discussed above, the petitioner has concentrated his efforts on attacking the Commission's alleged failure to provide all the enhanced procedural protections provided in a *revocation* hearing.

## III. CONCLUSION

For the foregoing reasons, the Court will deny the petitioner's Petition for Writ of Mandamus or In the Alternative for Writ of Habeas Corpus. An appropriate order will accompany this Memorandum Opinion.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the petitioner's Petition for Writ of Mandamus or In the Alternative for Writ of Habeas Corpus is **DENIED**. Accordingly, it is further

**ORDERED** that this case is **DISMISSED**.

**SO ORDERED.**