**Lawrence DAVIS Petitioner,**

v.

**M.L. BROWN, et al. Respondents.**

**No. CIV. A. 02–636(EGS).**

United States District Court,
District of Columbia.

March 31, 2004.

Jenifer Wicks, Washington, DC, for Plaintiff.

Daniel M. Cisin, United States Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. *Introduction*

On April 8, 2002, petitioner Lawrence Davis filed a Petition for a Writ of Habeas Corpus seeking release from custody at the District of Columbia Jail. Petitioner alleges that the revocation of his presumptive parole date, a decision initially made without an evidentiary hearing, violated his due process rights and his "liberty interest in remaining free." Pet. at 4. While petitioner seeks his release from confinement, he also originally sought "a [parole] rescission hearing ... [with] the opportunity to challenge the evidence and confront his accusers." *Id.*

Pending before the Court is the United States' Motion to Dismiss the Petition for Writ of Habeas Corpus. The United States argues that after the petition was filed, petitioner received a special reconsideration hearing regarding his parole date rescission, and thus the petition is now moot. Upon careful consideration of the motion, the response and reply thereto, petitioner's supplemental memorandum, the governing statutory and case law, and for the following reasons, it is by the Court hereby **ORDERED** that defendant's Motion to Dismiss is **GRANTED**.

### II. *Factual and Procedural Background*

In 1994, petitioner was sentenced in the Superior Court of the District of Columbia to six to eighteen years incarceration for attempted distribution of cocaine. He was paroled and released to the community in October of 1998. Prior to his release, petitioner's wife, Elizabeth Singleton, procured a civil protection order, prohibiting petitioner from contacting her or assaulting her in any way, and also ordering him to stay at least 100 feet away from his wife's person, home, and work place. On December 15, 1998, petitioner was arrested and charged with First Degree Sexual Abuse of Ms. Singleton. Petitioner appeared in court on December 16, 1998, and the charge was no papered. However,

while Ms. Singleton was still in the courtroom on December 16th, awaiting the court's decision on the sexual abuse charge, the defendant allegedly whispered in her ear, "Bitch, you broke your promise, now it's time to die." Ms. Singleton filed a complaint, alleging that petitioner had threatened her. The U.S. Probation Office asked Ms. Singleton to sign a statement about her allegations, but she did not. Despite the threat, the U.S. Probation Office recommended that petitioner remain on supervision pending the final disposition of his case.

On March 23, 1999, Ivy Moorfield, Ms. Singleton's sister, called the Commission and stated that petitioner had murdered Ms. Singleton. The U.S. Probation Office informed the Commission that the petitioner was a suspect in the murder, but had not been arrested or charged.

On March 26, 1999, the Probation Office requested the issuance of a warrant for petitioner for his failure to report a December 26, 1998, arrest on an outstanding warrant for domestic assault. The Commission did so, charging him with failing to report the arrest as well as violating the 1998 civil protection order by going to Ms. Singleton's residence on December 15, 1998. On April 27, 1999, following a preliminary interview, the Commission notified petitioner that it had found probable cause to hold him for a parole revocation hearing. On May 6, 1999, petitioner pled guilty to one count of violating a civil protection order, and received a 180 day sentence.

On July 9, 1999, the Commission notified petitioner that he was also being charged with violating the civil protection order for his threat to kill his wife during the December 16, 1998, court hearing. Petitioner was represented by counsel at the July 20, 1999, parole revocation hearing, and the hearing examiner determined that petitioner had violated his parole. The examiner found that the most serious violation was petitioner's December 16, 1999, threat to kill his wife. According to the parole hearing summary, petitioner was asked how his wife was killed. However, the examiner did not make a finding on the topic of the murder, and the hearing report does not indicate that his wife's death was a factor considered in the parole revocation. See United States' Ex. O, Revocation Hearing Summary. On August 27, 1999, the Commission issued a Notice of Action revoking petitioner's previous parole date and setting a presumptive parole date of November 29, 2002. However, after an interim hearing on July 17, 2001, the Commission modified the violation severity, and established an earlier parole date of January 18, 2002.

After the July 17, 2001, interim hearing the Commission's legal office learned for the first time that a grand jury was considering petitioner's involvement in his wife's murder. As a result of this information, the Executive Hearing Examiner recommended that petitioner not be reparoled. On January 2, 2002, the Commission reopened petitioner's case and rescinded his presumptive parole date, citing the fact that petitioner was the subject of an official investigation for the murder of his wife. The Commission informed petitioner that he would be scheduled for a reconsideration hearing as soon as the pending criminal investigation against him was concluded.

Petitioner filed the instant habeas petition on April 8, 2002, alleging that an evidentiary hearing had never been held regarding his responsibility for his wife's murder. The government subsequently conducted a special reconsideration hearing on June 17, 2003. The hearing examiner determined by a preponderance of the evidence that petitioner had murdered Elizabeth Singleton. In explaining the

finding, the examiner cited videotaped testimony from petitioner's 5–year–old son, taken the day after Ms. Singleton was murdered, in which the son described in detail being at Ms. Singleton's house with his father the day of the murder, waiting outside in the car and hearing sounds of a fight, and then going to his father's friends house in order for his father to "wash dishes" (which the hearing examiner inferred were possibly the knives used to stab Ms. Singleton); evidence that petitioner's DNA was found under Ms. Singleton's fingernails; and evidence that two knives were found in petitioner's car. *See* United States' Ex. V. The examiner recommended that the petitioner continue his term until expiration, and the Commission adopted the examiner's recommendation on July 11, 2003.

### III. *Analysis*

The United States moves to dismiss the petition on the grounds that, as the Commission subsequently conducted a special reconsideration hearing, petitioner has received all the relief to which he is entitled, and the petition is now moot. Petitioner advances three main arguments against dismissal: (1) that the United States did not have authority to reopen the parole decision and revoke the petitioner's presumptive parole date; (2) that the June 17, 2003, hearing was fundamentally unfair; and (3) that his conviction in case M–5622–99, for violation of the civil protection order, has since been overturned. Each argument is considered in turn.

### A. The United States Had Authority to Reopen the Parole Decision Based on New and Significant Adverse Information

■ The Parole Commission has the authority, upon the receipt of "new and significant adverse information" to reopen a previous parole decision and "void the previously established release date." 28

C.F.R. § 2.28(f). Petitioner argues that the United States did not have authority to reopen the case and revoke his presumptive parole date, submitting that the information relied upon by the government to revoke his presumptive parole date was not "new or significant" as compared to what was known at petitioner's original parole revocation hearing. Specifically, petitioner argues that, at the original parole revocation hearing, the Commission was fully aware that Ms. Singleton had been murdered, and that petitioner had been questioned by police about the murder.

■ While petitioner is entirely correct that the Commission was "aware" of the murder at the time of the original hearing, his conclusion that the Commission was subsequently barred from revisiting the parole decision too narrowly construes what constitutes "new and significant adverse information" justifying the reopening of a parole decision. "New" information is not strictly limited to information that a Commission was previously completely unaware of, but more broadly encompasses "previously existing information that was not *considered* at the initial hearing." *Fardella v. Garrison,* 698 F.2d 208, 211 (4th Cir.1982) (emphasis added); *see also Frassetto v. Perrill,* 955 F.2d 176, 178 (2d Cir.1992) (collecting cases); *Lewis v. Beeler,* 949 F.2d 325, 329 (10th Cir.1991) ("Because the Commission is not primarily an investigative body and must depend largely on interested parties for relevant information, it will sometimes need to review previously considered allegations in light of newly received information. It is for this reason that the Commission is given the power to reopen cases"). Here, the information not previously considered, and warranting revocation of the previously established parole date, was notice provided by the U.S. Attorney's Office that an *ac-*

*tive criminal investigation* of petitioner's involvement in a murder had commenced, and that a grand jury had convened. *See* United States' Ex. S (notice of reopening and rescinding of parole date to petitioner). While the Commission may have previously suspected petitioner's involvement in the murder, especially given his previous threat to kill her, information that the U.S. Attorney for the District of Columbia was now *actively pursuing a criminal murder investigation* of petitioner was certainly "new and significant" enough to justify revisiting a parole decision. Indeed, had notice of a murder investigation *not* triggered a second look at petitioner's fitness for parole, the Commission would have been in gross dereliction of its duties. *See* D.C.Code § 24–404(a) (parole is authorized only when "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law" and upon a finding that "his release is not incompatible with the welfare of society").

Further, petitioner's involvement in his wife's murder was not actively "considered" during the first hearing, evidenced by the fact that the July 20, 1999, Revocation Hearing Summary lists the "most serious charge" as "communicating a threat to kill," rather than suspicion of, or responsibility for, a murder. *See* United States' Ex. O at 3. Ms. Singleton's murder is not cited as a factor warranting parole revocation. The Commission did not then have, nor did it consider, crucial evidence that was later considered at the special reconsideration hearing: namely petitioner's son's testimony, the DNA evidence, and the evidence that knives were found in petitioner's car. *See id.* at 6 (stating that petitioner was a suspect in the murder, but that the case needed to be reopened if further evidence was submitted).

Accordingly, as the Commission did not actively consider the murder allegations at the original parole revocation hearing, the information that petitioner was being actively investigated for his wife's murder is "new and significant" pursuant to 28 C.F.R. § 2.28(f), and warranted a reopening of the previous parole date determination.

**B. Petitioner Received a Fair Special Reconsideration Hearing**

 Petitioner claims that his June 17, 2003, special reconsideration hearing was fundamentally unfair and violative of due process protections, arguing that hearsay evidence was impermissibly considered, and that he was not permitted to cross-examine witnesses. However, petitioner's claim that he was entitled to, for example, the right to cross-examine witnesses, rests on a mistaken assumption about the type of hearing to which he was entitled. A *parole grantee*—one who is "free" on parole—is guaranteed certain due process rights during a parole revocation hearing to protect his fundamental liberty interest in remaining free. *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (listing due process protections necessary at a parole revocation hearing, including the right to cross-examine witnesses). In contrast, the liberty interest of a *presumptive parolee,* such as petitioner, who is merely *anticipating* a future parole date, "occupies a lower place in the inmate-liberty-interest continuum" than the interest of a parole grantee. *Green v. McCall,* 822 F.2d 284, 292–93 (2d Cir.1987) (noting that a "presumptive parolee's release expectation [is] temporally more remote" and "subject to greater control by the Commission" than a parole grantee's expectation in remaining free). While as a parole grantee petitioner would have been entitled to *Morrissey's* full panoply of rights at a parole revocation hearing, including the right to cross-examine witnesses, the same due process rights are not afforded a presumptive parolee

during a special reconsideration hearing. *See Cole v. Harrison,* 271 F.Supp.2d 51, 53 (D.D.C.2002) ("Nor can there be a liberty interest created by the parole hearing itself which would entitle petitioner to confront and cross-examine adverse witnesses."); *Sparks v. Gaines,* 144 F.Supp.2d 9, 15 (D.D.C.2001)(noting that a prisoner is stripped of his liberty interest when parole is revoked).

▮ Given petitioner's status as a presumptive parolee, rather than a parole grantee, he was entitled to a reparole determination hearing. Petitioner had the right to advance notice of the hearing, the right to attend the hearing with counsel, the right to pre-hearing disclosure of information to be used at the hearing, and the right to respond to the evidence. *See* 28 C.F.R. §§ 2.19(c), 2.72. Petitioner does not, and could not, argue that he was denied any of these rights at his special reconsideration hearing. He was present and represented by counsel at the hearing, and his lawyer presented arguments to the Commission. *See* United States' Ex. V. Contrary to petitioner's assertions that the Commission's reliance on hearsay evidence was impermissible, the Commission is not barred from relying on hearsay in making a parole date determination, or even in revoking parole. *See Crawford v. Jackson,* 323 F.3d 123, 128 (D.C.Cir.2003)("Reliance on hearsay in parole revocation proceedings is not per se impermissible."). Likewise, petitioner's argument that he should have been afforded the opportunity to cross-examine witnesses also falls flat, as a presumptive parolee is not guaranteed the right to cross-examine witnesses at a parole hearing. *See Cole v. Harrison,* 271 F.Supp.2d 51, 53 (D.D.C.2002).[1]

## C. Petitioner's Overturned Conviction is Irrelevant to Resolution of the Instant Petition

▮ Finally, petitioner argues that because his conviction in case M–5622–99, for a violation of the civil protection order, has been overturned, his release is warranted. *See* Pl.'s Supplemental Mem. of P. & A. in Support of Petition (providing evidence that the conviction for failing to complete a counseling program for domestic violence was overturned). Though not entirely clear from the face of petitioner's supplemental filing, petitioner appears to be claiming that this conviction was the basis for his parole revocation, and thus the overturning of that conviction demands his release.

Plainly put, petitioner's argument is without merit. Petitioner's original parole revocation was based not on his failure to complete the counseling program charged in M–5622–99, but rather on his communicating a threat to kill his wife, a completely different violation of the civil protection order as charged in M–18306–98. The offense documented in M–5622–99, the overturned conviction, was not referenced during the revocation process; accordingly, its reversal is completely irrelevant to petitioner's instant habeas petition.

---

1. Moreover, this Court's review of the Commission's decision is a limited one. The Commission's decision to rescind petitioner's parole date does not run afoul of due process guarantees unless it was "totally lacking in evidentiary support" or "so irrational as to be fundamentally unfair." *Duckett v. Quick,* 282 F.3d 844, 847 (D.C.Cir.2002)(referring to decisions revoking parole). The Parole Board may authorize a release on parole when "there is a reasonable probability that a prisoner will live and remain at liberty without violating the law," and "that his release is not incompatible with the welfare of society." D.C.Code § 24–404. Here, the Commission determined that it could not make such a finding. *See* United States' Ex. V at 11 ("Based on the above [evidence], the Commission could not reasonably find that your parole would be compatible with the welfare of society. You pose a significant danger to the lives and safety of others.").

## IV. *Conclusion*

Petitioner originally challenged the Parole Commission's decision to rescind his presumptive parole date without holding a hearing. A special reconsideration hearing, during which petitioner was afforded all of the procedural protections guaranteed during such a hearing, has since been conducted. Accordingly, for the reasons stated above, the Court finds that the Petition for a Writ of Habeas Corpus is now moot, and it is hereby

**ORDERED** that the United States' Motion to Dismiss the Petition for a Writ of Habeas Corpus is **GRANTED.**