**Phillip E. DUCKETT, Appellant,**

v.

**Margaret QUICK, Director, D.C. Board of Parole, et al., Appellees.**

**No. 00–7261.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 8, 2001.

Decided March 15, 2002.

Beverly G. Dyer, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender.

Mary L. Wilson, Assistant Corporation Counsel, argued the cause for appellees. With her on the brief were Robert Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Edward E. Schwab, Senior Counsel.

Before: GINSBURG, Chief Judge, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

Phillip Duckett petitioned the United States District Court for a writ of habeas corpus, alleging that the District of Columbia Board of Parole (BOP) revoked his parole in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. The district court denied the petition and Duckett appealed. Finding no merit in Duckett's claims, we affirm the judgment of the district court, albeit for reasons

distinct from those given by the district court.

## I. Background

In May, 1995 Duckett was released on parole. Just over a year later he was arrested for failing to report to his parole officer; as a result, in October, 1996 the BOP revoked his parole. After unsuccessfully challenging the revocation in the courts of the District of Columbia, Duckett petitioned the district court for a writ of habeas corpus. Because the BOP could not locate a usable audiotape recording of the original parole revocation hearing, it granted Duckett a new hearing.

Duckett, who had the assistance of counsel at this second hearing, raised two defenses. First, he argued that he did not know he was required to report and denied that his parole officer told him to report. Second, Duckett argued that because he had found a job and a place to live and had stayed out of trouble, the BOP should not revoke his parole based upon a minor violation. Nonetheless, the BOP again revoked Duckett's parole because of his failure to report.

Duckett renewed his habeas petition, which was denied by the district court in October, 2000. The district court concluded that Duckett had received all the process he was due under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); the BOP's revocation decision was supported by Duckett's admission that he failed to report; and the BOP's failure to follow D.C. municipal regulations did not deny Duckett due process. *Duckett v. Quick*, No. 98–0831, slip op. at 2–3 (Oct. 4, 2000). Duckett filed a notice of appeal, and the district court issued a certificate of appealability.

## II. Analysis

"The writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Duckett challenges the BOP's revocation of his parole as violating in a number of respects his constitutional right not to be deprived of liberty without due process of law.

■ First, Duckett contends due process entails a substantive component requiring the BOP to consider not only whether he violated a condition of his parole but also whether "circumstances in mitigation suggest that the violation does not warrant revocation." For this Duckett relies principally upon *Black v. Romano*, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). Although the Court in *Black* did not hold that due process always requires "that the factfinder in a revocation proceeding ... be granted discretion to continue probation or parole," it acknowledged that "concerns for fundamental fairness would preclude the automatic revocation of probation" in some circumstances. *Id.* at 612, 615, 105 S.Ct. at 2258, 2259 (citing *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064, 2072–73, 76 L.Ed.2d 221 (1983)). Furthermore, "where such discretion exists ... the parolee or probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition." *Black*, 471 U.S. at 612, 105 S.Ct. at 2258.

*Black* is of no help to Duckett because the record does not indicate that the BOP revoked his parole based solely and mechanically upon its finding he violated a condition of parole, and the transcript of the revocation hearing confirms he had the opportunity to argue that his violation was excusable and that his parole should not be revoked. Duckett testified that he did not recall being told to report to his parole officer, presented to the BOP evidence

that while on parole he had a job and a place to live, and argued against revocation on those grounds. The BOP, however, determined that the reporting requirement was one of the most important conditions of parole, and that Duckett's violation of that requirement was "flagrant." Thus, the BOP appears to have considered both the seriousness of Duckett's violation and the mitigating factors he advanced. As a result, even if due process requires the BOP to have exercised discretion before revoking his parole, we cannot conclude that it failed to do so.

Duckett, noting that the hearing examiner "did not explicitly find that [his] testimony that he did not recall being instructed to report back was not credible," and again emphasizing the factors militating against revocation, also argues that "the record in this case does not support a rational conclusion that [he] was not suitable for continued parole." If the BOP's decision were either totally lacking in evidentiary support or were so irrational as to be fundamentally unfair, then the revocation of his parole indeed would violate due process. *See Douglas v. Buder*, 412 U.S. 430, 432, 93 S.Ct. 2199, 2200–01, 37 L.Ed.2d 52 (1973) (holding that revocation of probation "totally devoid of support" violates due process); *Bearden*, 461 U.S. at 672, 103 S.Ct. at 2072–73 (establishing substantive due process right not to have probation revoked due to inability, despite reasonable efforts, to pay fines or restitution, unless alternative punishments are inadequate).

■ Duckett has not made either showing, however. The BOP had before it Duckett's admission that he failed to report, and his parole officer's statement that he had instructed Duckett upon his release to report back to him on June 5, 1995. Thus, there was evidentiary support for the BOP's conclusion that Duckett had violated a condition of his parole. And

revoking Duckett's parole for failing to report as instructed was not fundamentally unfair. Unlike the violation at issue in *Bearden*, Duckett's violation was within his control. Furthermore, we think the BOP's conclusion that failing to report as directed is a major violation of parole was reasonable; as the BOP explained, parole "is about accountability" and failing to report prevents the Government from monitoring a parolee's conduct. *See United States v. Manfredonia*, 341 F.Supp. 790, 795 (S.D.N.Y.1972) ("The requirement to report, to account, is centrally and necessarily implied in the probationer's status").

■ Next, Duckett argues that he was denied due process because the BOP failed to produce "a record of the hearing sufficient to establish compliance with due process requirements." More specifically, he claims that neither the BOP's written decision nor the audiotape of his second revocation hearing "documents a finding" that he was told to report. The BOP did, however, state as a fact found in its "Order" dated July 21, 1999 that Duckett had "[f]ailed to report as directed" by his parole officer. Because the BOP's written statement memorialized this finding, it is of no moment that there are gaps in the tape of the hearing.

In a relatively undeveloped argument, Duckett contends that he was denied "the right to confront and cross-examine adverse witnesses," *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604, because the BOP did not allow him to cross-examine his parole officer and did not find good cause why he should not be allowed to do so. Indeed, the BOP did not find good cause why the officer's testimony had to be admitted in documentary form, thereby depriving Duckett of the opportunity to cross-examine him. The right to cross-examine witnesses can be waived, however, *see Taylor v. United States*, 414 U.S. 17, 19–20, 94

S.Ct. 194, 195–96, 38 L.Ed.2d 174 (1973) (defendant in criminal trial waived right to cross-examine witnesses by failing to attend trial), and two circuits have recognized specifically that the right to cross-examine witnesses in a parole revocation hearing can be waived, *see White v. White,* 925 F.2d 287, 291–92 (9th Cir.1989) (stating *Morrissey* right to cross-examine can be waived but holding parolee's admission of parole violations did not constitute waiver); *McBride v. Johnson,* 118 F.3d 432, 438–39 (5th Cir.1997) (holding parolee had "invoke[d]" right of cross-examination by questioning witness's absence at prior hearing and objecting to proffered hearsay testimony).

■ There is no indication that Duckett, who was represented by counsel at the revocation hearing, asked to cross-examine his parole officer. Indeed, Duckett nowhere asserts that he made such a request and, when asked at oral argument, Duckett's counsel was unable to assert that Duckett had invoked his right at the hearing. Because Duckett has failed to establish that he did not waive his right to cross-examine his parole officer, we cannot grant his petition on this ground. *Cf. Johnson v. Zerbst,* 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–25, 82 L.Ed. 1461 (1938) (burden rests on habeas petitioner to establish that he did not waive his right to counsel).

Finally, Duckett presses most vigorously his argument that the BOP denied him due process by failing to comply with D.C. municipal regulations requiring the BOP to (1) exercise discretion in determining whether violation of a condition requires revocation of parole, (2) consider certain specific factors, and (3) discuss each factor in its written decision. D.C. MUN. REGS. tit. 28 §§ 219.6, 219.8, 219.12. Duckett contends that these regulations, like the regulations governing the parole determinations at issue in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), create a liberty interest in parole and, most important, that a violation of the regulations is therefore a denial of due process.

■■ Although it is obvious that in this case the BOP did not comply with the D.C. regulation requiring it to discuss in its written decision its consideration of each factor listed in § 219.8 of the regulations, the BOP did not thereby deny Duckett due process. Duckett's argument is based upon the erroneous assumptions that his liberty interest in remaining on parole arose from the regulations governing parole revocation, and that therefore due process required the BOP to comply with the regulations. In fact, Duckett's constitutional interest in remaining free on parole was independent of any regulation governing revocation procedures. *Morrissey,* 408 U.S. at 480–82, 92 S.Ct. at 2599–2601. Moreover, even when a liberty interest does arise from a state or local regulation, the procedures required before a person may be deprived of his constitutional right to liberty are derived not from the regulation but from the Constitution itself. *See Greenholtz,* 442 U.S. at 14–16, 99 S.Ct. at 2107–08 (discussing procedures required by the Constitution). The general rule is that "[o]nce state law defines the substance, constitutional law establishes the minimum procedures." *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988); *see also Brandon v. District of Columbia Board of Parole,* 823 F.2d 644, 648–49 (D.C.Cir.1987) ("state procedural law requirements must be enforced in state courts under state law"). Therefore, Duckett's argument that due process required the BOP to follow its own regulations must fail. The procedures required by due process before one's parole may be

revoked, set out in *Morrissey* were, as we have held, provided to Duckett to the extent they were not waived by him.

Duckett invokes yet another claimed liberty interest, namely, that of keeping his good time credits, which he claims were "effectively invalidated" when the BOP revoked his parole. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Because Duckett had a liberty interest in remaining on parole, and the parole revocation procedures required under *Morrissey* and provided to Duckett are more extensive than those required under *Wolff* for revocation of good time credits, *Wolff,* 418 U.S. at 563–72, 94 S.Ct. at 2978–82, Duckett's loss of good time credits could not have violated the requirements of due process.

### III. Conclusion

For the foregoing reasons the judgment of the district court denying Duckett's petition for a writ of habeas corpus is

*Affirmed.*