Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 7, 2003          Decided March 28, 2003

No. 02-7009

CURTIS E. CRAWFORD,
APPELLANT

v.

PATRICIA A. JACKSON,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv01272)

———

*Nicholas G. Terris*, appointed by the court, argued the cause as amicus curiae on behalf of appellant. With him on the briefs were *Glenn R. Reichardt* and *Stephen W. Grafman*.

*Curtis E. Crawford* filed pro se briefs.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Mary L. Wilson*, Assistant Corporation Counsel, argued the cause for appellee. With her on the brief were *Charles L. Reischel*, Deputy Corporation Counsel, and *Edward E. Schwab*, Assistant Corporation Counsel. *John R. Fisher*, Assistant U.S. Attorney, entered an appearance.

Before: EDWARDS, HENDERSON and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Curtis E. Crawford appeals the denial of his petition for a writ of habeas corpus challenging the revocation of his parole. We hold, in light of the United States' waiver of any objection to lack of personal jurisdiction, that the court has jurisdiction to hear this appeal. We further hold, in light of the strong indicia of reliability of the police investigative report, that the D.C. Parole Board's reliance on hearsay evidence did not violate Crawford's due process rights. The police investigative report was detailed, Crawford's admissions corroborated portions of the report, and the report was internally corroborative of the complainant's claim that Crawford had assaulted her. In the absence of contrary evidence, which Crawford had an opportunity to present, and Crawford's far-fetched and incomplete explanation of how the complainant suffered her injuries, the report provided sufficiently reliable evidence of Crawford's culpability for aggravated assault, and thus of his violation of parole. Accordingly, we affirm.

## I.

Since being convicted by a jury of second degree murder in 1972, Crawford has violated parole on numerous occasions. As relevant here, Crawford was paroled on November 14, 1996, and arrested on February 4, 1999, by the Metropolitan Police Department for aggravated assault in October 1998. At a parole revocation hearing in July 1999, the Board considered as grounds for revocation the aggravated assault charge as well as Crawford's use of marijuana and cocaine.

The Report of July 7, 1999, on the revocation hearing focuses primarily on the October 1998 assault. After sum-

marizing the Arrest Prosecution Report of the Metropolitan Police Department ("police investigative report"), the Hearing Report states that Crawford "adamantly denies his involvement" in the aggravated assault, claiming that the complainant instead had a disagreement with a third person inside of the house, had left the premises, and then fallen while attempting to climb a fence and injured herself. The Report noted that Crawford had not been indicted for aggravated assault although he was scheduled to return to court for a felony conference. However, as the Report further noted, Crawford did not deny his drug use on two different occasions while on parole. The Report also recounted that Crawford had violated parole "at least four (4) times," continued to get arrested and to use drugs, had a history of serious assaultive behavior and illegal drug use, and had been diagnosed in 1987 as having a severe antisocial personality. Nonetheless, Crawford's probation officer recommended that his parole be reinstated. The Hearing Official disagreed, recommending to the Board that it revoke Crawford's parole and reconsider Crawford for parole by May 11, 2000. The Board concurred in the Hearing Official's recommendation and, based on the aggravated assault and two drug-use violations of the conditions of his parole, revoked Crawford's parole on July 21, 1999.

Crawford filed a petition for a writ of habeas corpus in May 1999 challenging his detention pending a parole revocation hearing; after the July revocation, he amended his petition to challenge the revocation. Following denial of the petition, Crawford appealed, contending that his due process rights were violated at the revocation hearing because, among other claims, the Board (1) did not allow him to cross-examine the author of the police investigative report; (2) denied him the opportunity to call witnesses; and (3) relied solely on the police investigative report containing hearsay to revoke his parole. The court summarily affirmed denial of the writ except with respect to Crawford's challenge to the Board's reliance on the police report. *Crawford v. Jackson*, No. 02–7009 (Order of April 10, 2002).

**II.**

The threshold question of our jurisdiction has been resolved by the United States' waiver of any objection to lack of personal jurisdiction. *See Chapman–Bey v. Thornburgh*, 864 F.2d 804, 813 (D.C. Cir. 1988). When Crawford originally filed his petition for a writ of habeas corpus, he was confined as a D.C. prisoner at the District of Columbia's Correctional Complex in Lorton, Virginia, where his custodian was Warden Patricia Jackson. At that point there is no question that the court had jurisdiction to consider the petition. As the court stated in *Blair–Bey v. Quick*, 151 F.3d 1036, 1039 (quotation omitted), *reh'g granted in part on other grounds*, 159 F.3d 591 (D.C. Cir. 1998), "the appropriate defendant in a habeas action is the custodian of the prisoner," which would have been the warden of Lorton, over whom we have jurisdiction, *id.* at 1043; *McCall v. Swain*, 510 F.2d 167, 177 (D.C. Cir. 1975).

Pursuant to section 11201(b) of the National Capital Revitalization and Self–Government Improvement Act of 1997 ("1997 Revitalization Act"), Pub. L. 105–33, 111 Stat. 251, 734, however, Crawford was subsequently removed in June 2000 from the Lorton Correctional Complex, and was eventually transferred to the Federal Correctional Institution at Petersburg, Virginia. Section 11201(b) required the District of Columbia to close its Correctional Complex in Lorton, Virginia by December 31, 2001, and directed that "the felony population sentenced pursuant to the District of Columbia Code residing at the Lorton Correctional Complex shall be transferred to a penal or correctional facility operated or contracted for by the Bureau of Prisons." Crawford's transfer thus raised the question whether the court lacks jurisdiction to consider his petition.

Although the transfer of a prisoner from one correctional facility to another would not ordinarily deprive the court of jurisdiction over the habeas petition, *see Blair–Bey*, 151 F.3d at 1039 n.1, the transfer here was not simply a transfer between correctional facilities, but also a transfer of responsibility for the imprisonment of D.C. felons from the District of

Columbia to the United States, such that the District of Columbia asserted that it is "now powerless to comply with any court order that [Crawford] should be released . . . or have a new parole revocation hearing." Appellee's Br. at 5. Given both the fact that Crawford is currently housed in the federal Petersburg correctional facility in Virginia and the questions surrounding the continued applicability of this circuit's precedent to the transfer of such a D.C. prisoner, the court ordered the United States to enter a limited appearance to advise the court whether it may substitute the United States as appellee in this case. *Crawford v. Jackson*, No. 02–7009 (Order of February 7, 2003). In light of a pending appeal involving D.C. prisoners transferred pursuant to the 1997 Revitalization Act, the court granted leave to file an amicus curiae response to the Public Defender Service for the District of Columbia. *Id.* (Order of March 12, 2003).

The court need not now address the complex issues that may arise regarding the effect of the 1997 Revitalization Act on this circuit's preexisting habeas corpus precedent. *See, e.g.*, *Blair–Bey*, 151 F.3d at 1039 n.1; *Chatman–Bey*, 864 F.2d at 806 n.1; Fed. R. App. P. 23(a). The United States has entered an appearance and advised that it is waiving any objection to lack of personal jurisdiction in this case, and that the court "may substitute the Warden at FCI Petersburg, Stephen M. Dewalt, as the custodian of appellant/petitioner Curtis E. Crawford." Entry of Appearance and Response to Court Order of February 19, 2003, at 1. The United States also adopted, except as to an argument regarding Federal Rule of Appellate Procedure 23, the brief filed by the District of Columbia pursuant to D.C. Code § 24–132(h)(1)(c). While Crawford claims, in addressing the Response of the United States, that he is being unlawfully held because his transfer violated Rule 23, to the extent that Crawford claims that he therefore should be released from confinement, he never made such a claim in his opening brief although he had raised the claim in the district court. Because the jurisdictional question has been resolved by the United States' waiver and Crawford has not preserved any other Rule 23 claim, the court need not address whether, as the United States main-

tains in its February 13, 2003 Response, Rule 23 is inapplicable to a transfer under the 1997 Revitalization Act. *See Benkelman Tel. Co. v. FCC*, 220 F.3d 601, 607 n.10 (D.C. Cir. 2000)

Accordingly, we substitute Stephen M. Dewalt as the respondent, and in view of the United States' waiver of objection to lack of personal jurisdiction, we hold that the court has jurisdiction to address the merits of Crawford's appeal.

## III.

The essence of Crawford's remaining challenge to the D.C. Parole Board's revocation of his parole is that the Board impermissibly relied solely on an uncorroborated police investigative report containing hearsay evidence. He contends that under the standards set forth by the Supreme Court in *Morrisey v. Brewer*, 408 U.S. 471 (1972), revocation requires more than a finding of probable cause and must be based on verified facts. For this question of law, our review is de novo. *See Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir), *cert. denied*, 534 US 836 (2001).

## A.

As a preliminary matter, we reject the government's position, relying on *Duckett v. Quick*, 282 F.3d 844 (D.C. Cir.) *cert. denied*, 123 S. Ct. 247 (2002), that Crawford waived his right to challenge the Board's reliance on a single piece of hearsay evidence.

Prior to the hearing, Crawford received written notice of the procedural rights that he would receive at the revocation hearing. Crawford indicated, by checking appropriate boxes on the Notice Form, that he wished to present witnesses and requested that "persons be present at the hearing who have given information against me on which the Board may rely to revoke my parole." Another form, titled "Opening Statement at Revocation Hearing Without Attorney" and dated July 7, 1999, indicates that Crawford did not have "any adverse

witnesses whose presence you requested" and that Crawford was "ready to go forward with the hearing."

Because Crawford indicated prior to the revocation hearing that he wished to cross-examine adverse witnesses, and the Opening Statement form that the government maintains shows waiver was never signed by Crawford and only reflects a notation, presumably by the Board official who presided at the hearing, that Crawford did not wish to call additional adverse witnesses, the government's waiver theory fails. The Opening Statement also shows that Crawford had unspecified procedural matters that he wished to raise before the revocation hearing began, procedural matters that could have included an objection to exclusive reliance on hearsay evidence with regard to the aggravated assault charge. Further, while the government states that Crawford orally waived continuance of the revocation hearing so that he could call additional witnesses, that is a different issue from whether there was constitutionally sufficient evidence to revoke parole where the Board relied solely on the police report as evidence of Crawford's culpability in the aggravated assault. Therefore, unlike *Duckett*, where the defendant "was represented by counsel at the revocation hearing," 282 F.3d at 848, we hold that Crawford, a pro se petitioner, provided sufficient indication that he had concerns with the Board's reliance on the hearsay evidence. We turn to the merits of Crawford's challenge.

### B.

Crawford raises no objection to the admissibility of the police investigative report, and the court has held that the Board's regulations do not limit the information that it may consider. *Maddox*, 238 F.3d at 444, citing D.C. Mun. Regs. tit. 28 §§ 219.1–219.12 (1987). Rather, Crawford challenges the Board's exclusive reliance on the police investigative report to find a violation of the conditions of parole inasmuch as it is unsworn, prepared months after relevant events, and apparently consisted not of the author's personal observations or conversations with the complainant but instead was a summary of an affidavit prepared by another police officer

who responded to the scene. Further, Crawford notes the general unreliability of police reports in light of the adversarial relationship between the arresting officer and the arrestee. Crawford also points out that the report writer concluded only that there was probable cause to believe Crawford had committed the assault, and not that a preponderance of the evidence supported the accusation, as he asserts was required by the Board's regulations. As further indication of the Board's error in relying on the police investigative report, Crawford points out that in December 1999 the aggravated assault charge was dismissed for failure to prosecute and in June 2001 the D.C. Superior Court granted his motion pursuant to Superior Court Criminal Rule 118 to seal and expunge his arrest record for that charge.

Reliance on hearsay in parole revocation proceedings is not per se impermissible, *Morrisey*, 408 U.S. at 489; *cf. Gagnon v. Scarpelli*, 411 U.S. 778, 782 n.5 (1973), as this court has acknowledged, *Maddox*, 238 F.3d at 443. But just as clearly the reliability of hearsay evidence can vary greatly. As the Seventh Circuit has observed, the use of "unsubstantiated or unreliable hearsay . . . would certainly eviscerate the safeguards guaranteed . . . by *Morrisey* and *Gagnon*." *Egerstaffer v. Israel*, 726 F.2d 1231, 1235 (7th Cir. 1984). Similarly, in the context of reviewing a U.S. Parole Commission decision for abuse of discretion, the Fourth Circuit stated in *Marshall v. Garrison*, 659 F.2d 440 (4th Cir. 1981), that "[s]hort of some relevant, reasonably reliable evidence of the commission of another crime, the district court may not permit the Parole Commission to deny or postpone the granting of parole on the basis of a prisoner's commission of other crimes." *Id.* at 446.

Courts are properly more concerned with whether the evidence considered as a whole, including the hearsay evidence, was both sufficient in quantity and reliability to ensure fundamental due process rights. For example, in *Taylor v. U.S. Parole Commission*, 734 F.2d 1152 (6th Cir. 1984), the Sixth Circuit eschewed any concern about the admissibility or consideration of the hearsay per se in reviewing a Parole Commission decision for abuse of discretion. *Id.* at 1155. Rather, the court's concern arose from "the paucity of reliable

evidence of [the parolee's] criminal conduct" when based solely on a probation officer's summary of an arrest report. *Id.* at 1155–56. Such a finding "is but a step away from a finding of criminal conduct based solely upon evidence of a parolee's arrest with no account of the underlying circumstances." *Id.* at 1156. The court expressed no opinion, however, on whether the Commission could properly have made a finding of new criminal conduct based solely on a copy of the actual investigative report. *Id.* at 1156 n.3. Again, in another abuse of discretion case, *United States v. Stephenson*, 928 F.2d 728 (6th Cir. 1991), the Sixth Circuit concluded that the paucity of reliable evidence was too great where the only reliable evidence of the assault was "the meager testimony of the probation officer and [the parolee's] admission that '[t]here was some pushing in there.'" *Id.* at 732. No evidence by any witness established the extremely offensive or provocative conduct required to show a violation of state law. *Id.* at 732–33. In more extreme circumstances, the Second Circuit held in *Birzon v. King*, 469 F.2d 1241 (2d Cir. 1972), that due process was violated when parole was revoked on the basis of a parole violation report that relied on statements by several confidential informants. *Id.* at 1244. The infirmity in the hearing and determination arose from the fact that the Board resolved a credibility issue solely on the basis of the report without itself taking statements from the informants. *Id.* Hence, the court stated, "the board had no way of knowing how reliable the informants were and had no real basis on which to resolve the credibility issue against the parolee and conclude that he did in fact violate [a] condition . . . of his parole." *Id.* The extreme nature of the circumstances was revealed by the Board's refusal to provide the defendant with a copy of the report or with the substance of the informants' statements or their identity. *Id.*

This court has not addressed whether it is appropriate for a parole authority to rely exclusively on a police investigative report in revoking parole. However, in evaluating whether there is sufficient evidence to support a parole revocation, the court has examined whether the decision was "either totally lacking in evidentiary support or [was] so irrational as to be

fundamentally unfair." *Duckett*, 282 F.3d at 847. That standard matches well with the focus by other circuits on the quantity and reliability of hearsay evidence in similar cases, and appears, therefore, to be the appropriate one to apply in the instant case. Thus, in the context of hearsay evidence, we follow other circuits that have examined the reliability of the particular hearsay evidence, condemning reliance on it when the court reaches a negative evaluation. *Compare United States v. Comito*, 177 F.3d 1166, 1171, 1173 (9th Cir. 1999) *with United States v. Kindred*, 918 F.2d 485, 487 (5th Cir. 1990). This approach raises a red flag for parole authorities to ensure, before relying on hearsay, that there are sufficient indicia of reliability under the circumstances at hand to protect the prisoner's due process rights.

With respect to the use of police reports as hearsay evidence in parole revocation hearings, other circuits have expressed the readily apparent concerns regarding the dangers of relying on uncorroborated police reports. In *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986), the Eighth Circuit noted the relative unreliability of police reports as compared to laboratory reports of drug tests, and that the "relationship between police officers and those whom they arrest is much more personal and adversarial in nature than that between chemists and those whose urine they test." *Id.* at 643–44. In the court's view, "Congress exhibited similar doubts about the reliability of such reports when it specifically excluded them from the public records exception to the hearsay rule in criminal cases." *Id.* at 644. In *Farrish v. Mississippi State Parole Board*, 836 F.2d 969, 978 (5th Cir. 1988), the Fifth Circuit viewed hearsay testimony most damaging when presented through police officers, stating that "[t]he use of . . . unreliable hearsay undermines the accuracy of the fact-finding process" where the crucial testimony was provided by a police officer's recounting of "self-serving" statements by an informant. In addition, police statements are less reliable to the extent that they are unsworn, *Comito*, 177 F.3d at 1172 n.9, or contain multiple layers of hearsay, *see Bell*, 785 F.2d at 644.

We join the other circuits in expressing concern about the reliance in parole revocation hearings on hearsay in police reports, particularly as many revocation hearings likely will involve pro se prisoners with limited resources to obtain independent witnesses. To this extent, given judicial concern in light of the protections guaranteed by *Morrisey*, a parole authority takes a certain risk that its decision to revoke parole will not be judicially sustained where it relies solely on hearsay contained in a police investigative report as the basis for its decision. As the circuits' expressions of concern suggest, that risk is measurably lessened only in circumstances that demonstrate the strong reliability of the hearsay evidence.

Crawford's case presents the issue not decided by the Sixth Circuit in *Taylor*. The D.C. Parole Board relied on a police investigative report charging Crawford with aggravated assault. The report was prepared as the basis for an affidavit for an arrest warrant. As such it was quite detailed. The police investigative report recounted that while celebrating Crawford's birthday the complainant sustained a laceration to the top of her head and on her lip, and that the complainant's face was swollen on the right side, and her left rib and back were bruised. According to the complainant, Crawford had been drinking and had slammed her against the living room wall several times. The responding police officer stated that he observed "deep indentations in the wall that [were] consistent with [Crawford] slamming the complainant's head against the wall in the living room several times. The indentations were also bloody." The writer of the report sought an arrest warrant for Crawford for "intentionally, knowingly, viciously beat[ing] the complainant to a point of unconsciousness," stating that "[t]he attack was unprovoked by the complainant."

The hearsay relied on by the D.C. Parole Board in revoking Crawford's parole is significantly different from that condemned in the parole revocation cases that we have discussed. First, the report is a police investigative report, and not merely a probation officer's summary of a police report. As such, the report is quite detailed, an indicia of reliability.

*See, e.g.*, *United States v. Chin*, 224 F.3d 121, 124 (2d Cir. 2000); *Bell*, 785 F.2d at 644 (8th); *Egerstaffer*, 726 F.2d at 1235 (7th). It provides a fairly full account of the circumstances surrounding the aggravated assault. Missing only is Crawford's version of events.

Second, Crawford's admissions at the revocation hearing corroborate portions of the report recounting an altercation and its underlying circumstances. Key facts are undisputed: Crawford was celebrating his birthday, he had been drinking, and he had vomited inside the house; thereafter, the complainant was injured. According to the complainant, Crawford had beaten her up. Thus, much of what the police report states with regard to what the complainant said is conceded as accurate by Crawford, who challenges only the complainant's credibility in accusing him as her attacker.

Third, the report contains internal corroboration of the complainant's version of events. The responding officer stated that he saw the bloody indented walls inside the house. This observation undercuts Crawford's claim that the complainant was injured when she fell while climbing a fence outside of the house. Crawford never disputed the condition of the living room walls or explained their bloody appearance. The report itself thus provided the Board with a basis for evaluating and crediting the complainant's credibility. Indeed, the far-fetched explanation offered by Crawford to explain the complainant's injuries and his failure to explain the condition of the living room wall provided reasonable cause for the Board to doubt his denial of culpability.

Fourth, Crawford had an opportunity at the revocation hearing to present evidence contesting the hearsay police report but did not. Unlike the parolee in *Birzon* who was unaware of the contents of a report based on information provided by anonymous informants, Crawford was not denied access to the police investigative report and knew the identity of the complainant as well as the identity of a third person who was present at the premises at the pertinent time. Yet, despite the obvious incentive to present supporting evidence,

he did not call any witness or present evidence other than his own testimony to support his version of events.

Fifth, neither the claimed double or triple hearsay in the police investigative report nor its writer's legal conclusion diminish the reliability of the report. It is unclear whether the writer of the report was the responding police officer, referring to himself as the affiant. But assuming he was not, the writer is reporting what the responding officer saw. Crawford's admissions were corroborative of much of the report and he presented no evidence other than his own testimony to show that he was not the complainant's attacker, much less that there were no bloody indentations on the living room wall or that there was another explanation for the condition of the walls. Thus, the usual suspicion of second/third-hand hearsay is considerably lessened. The fact that the writer of the report reached the legal conclusion that there was probable cause to believe Crawford was guilty of aggravated assault is irrelevant; the Board could read the report in light of Crawford's denial and explanation of the complainant's injuries and conclude that there was a preponderance of evidence of his culpability.

Under the circumstances, given the indicia of reliability of the police investigative report, the Board's reliance on the hearsay evidence did not render its revocation decision so lacking in support that it was fundamentally unfair. In a different context, this court has cautioned the government against relying on hearsay at sentencing where the defendant "vigorously dispute[s]" allegations supported by hearsay evidence. *United States v. Lemon*, 723 F.2d 922, 934 & n.35 (D.C. Cir. 1983). Here the report provided the Board with a basis on which to credit the complainant, Crawford had an opportunity to present evidence, and the Board could reasonably reject Crawford's denial of culpability based on its assessment of his testimony. *Cf. United States v. Yunis*, 859 F.2d 953, 960 (D.C. Cir. 1988). Moreover, as the court has already concluded, Crawford failed to show any prejudice from his inability to cross-examine the police officer who wrote the report or to call the complainant at the revocation

hearing. *Crawford v. Jackson*, No. 02–7009 (Order of April 10, 2002).

Contrary to Crawford's position, the expungement of the record of his arrest for aggravated assault by the Superior Court of the District of Columbia, two years after the Board revoked his parole, does not undermine the reliability of the police investigative report. *Cf. Teachey v. Carver*, 736 A.2d 998, 1007 (D.C. 1999). The expunging court made no findings of fact based on clear and convincing evidence as required by Superior Court Criminal Rule 118(e), *see Dist. of Columbia v. Davis*, 811 A.2d 800, 802 (D.C. 2002), and in reaching its conclusion summarily stated that it relied on Crawford's motion and the government's lack of opposition. *United States v. Crawford*, Criminal No. F–796–99 (D.C. Sup. Ct. Aug. 21, 2002). Under District of Columbia law, the movant is not entitled to relief under Rule 118 based on the default of the government unless the petitioner has made a prima facie showing that he was entitled to relief, *see Davis*, 811 A.2d at 804, and the D.C. Superior Court never made such a finding, *U.S. v. Crawford*, Criminal No. F–796–99. Although appellate courts will presume that trial courts applied the correct law, the expunging court never made any findings of the "factual circumstances of the challenged arrest and any post-arrest occurrences that it deems relevant," as required by Rule 118(f)(2)(c). Even to establish that the expungement collaterally estops the government from continuing to enforce the Board's revocation of Crawford's parole, Crawford has "the burden of showing that any issue in the present litigation as to which he seeks preclusion is identical to the one that was decided" earlier. *Hogue v. Hopper*, 728 A.2d 611, 615 (D.C. 1999). Absent findings by the expunging court, the basis of the expungement is unclear and Crawford therefore cannot show that the expunging court credited his version of events. *Id.*

Finally, while Crawford maintains that the Board's decision to revoke parole is not necessarily supported solely by what he characterizes as his two non-criminal drug violations of the conditions of his parole, violations that he views as "little more than an afterthought," Crawford's admission of his

illegal drug use on two occasions while on parole does lend further support for the Board's decision. His parole officer advised the Board that the two tests of Crawford's urine indicated the presence of unlawful drugs. Crawford does not contest that his drug use violated conditions of his parole. However, because we hold that the Board permissibly relied on the police investigative report, there is no occasion to address whether the Board's reliance would have been harmless in view of the drug violations. *Compare Egerstaffer*, 726 F.2d at 1237–38, *with United States v. Zentgraf*, 20 F.3d 906, 910 (8th Cir. 1994); *Nixon v. Quick*, 781 A.2d 754, 763–64 (D.C. 2001).

Accordingly, we affirm the judgment of the district court denying the petition for a writ of habeas corpus.