Walter ASH, Plaintiff,

v.

Edward F. REILLY, Jr., Cranson J. Mitchell, John Simpson, In their official capacities as Commissioners of the United States Parole Commission

Odie Washington, In his official capacity as Director of the District of Columbia Department of Corrections

Fred Figueroa, In his official capacity as Warden of the Correctional Treatment Facility, Defendant.

Civil Action No. 03–2007 (RMU)(AK).

United States District Court, District of Columbia.

Dec. 7, 2004.

Olinda Moyd, Public Defender Service for the District of Columbia, Washington, DC, for Petitioner.

Daniel M. Cisin, Margaret J. Chriss, U.S. Attorney's Office, Washington, DC, for Respondents.

## MEMORANDUM ORDER

ALAN KAY, United States Magistrate Judge.

Before the Court is the Petitioner's Amended Petition for a Writ of Habeas Corpus [5] brought under 28 U.S.C. § 2241 and 2243, the Respondent's Opposition [8] and the Petitioner's Reply [9] and the Respondent's Response to the Petitioner's Reply [11]. The Petitioner is challenging his present detention on the basis that his rights were violated at an August 13, 2003 parole revocation hearing at which time his parole was revoked and his current sentence of 102 months was imposed.

## I. FACTUAL BACKGROUND

The Petitioner, Wilbur Ash [1] is currently being incarcerated at the Lee United

---

1. Although the original caption to this case named the petitioner as Walter Ash, the par- ties are in agreement that the Petitioner's correct name is Wilbur Ash.

States Penitentiary in Bennington Gap, Virginia. Ash first petitioned for habeas relief on September 26, 2003 at which time he was being incarcerated at the Central Treatment Facility in Washington, D.C. An Amended Writ of Habeas relief was filed on September 3, 2004.

Wilbur Ash was sentenced on March 3, 1995 in the Superior Court for the District of Columbia to 5-to-15 years for possession with intent to distribute cocaine. On March 8, 2001, Mr. Ash was released on parole. On April 4, 2002, Ash was charged, in Baltimore, Maryland, with attempted murder, assault in the first and second degree, and carrying a dangerous and deadly weapon. The charges against him arose from events that are alleged to have occurred on April 1, 2002. Although all of the charges against Mr. Ash were dismissed on June 12, 2003 by the Circuit Court for Baltimore City, Mr. Ash was detained by the Parole Commission for alleged violations of his parole. A probable cause hearing was held on June 20, 2003, at which time the hearing examiner made a no probable cause finding on technical violations and the attempted murder charge, but found probable cause with regard to the three assault counts. A parole revocation hearing was thus scheduled.

At the August 13, 2003 parole revocation hearing, Officer Ronald Shepke, the author of the police report of the incident, appeared as the sole witness to testify against Mr. Ash for the Commission. Jerome Simms, a witness for the Petitioner, and the alleged crime victim, did not appear at the hearing despite having been subpoenaed to testify. The only witnesses who testified at the parole revocation hearing were Mohammed Gassama, the Petitioners Court Supervision Officer, and Officer Shepke.

Officer Shepke testified that he had no personal knowledge of what had happened. (Tr. at 21, 23, 27, and 28.) The Officer did testify to having seen the Petitioner leaving the residence where the incident was alleged to have taken place, and that he saw the Petitioner make a throwing motion and apparently toss an object over a fence. (Tr. at 18.) After the Petitioner was apprehended, Officer Shepke retrieved a box cutter from the vicinity. (Id.)

The only evidence presented at the parole revocation hearing regarding the alleged 'cutting' was based on Officer Shepke's police report, which was based solely on hearsay statements made by four or five alleged witnesses to the officer following the incident. (Tr. at 20, 22.) These witnesses were not brought to testify at the parole hearing and there is a dispute between the parties as to whether their identities were shared with the Petitioner and his counsel in advance of the hearing. Additionally, the Parole Commission admitted to the Defendant that there were two other adverse witnesses but that the Commission was not calling them to testify at the revocation hearing. (Motion at 19.) There was not a good cause finding made as to why these two witnesses were not called to testify.

Prior to, and immediately following Officer Shepke's testimony, defense counsel objected to the officer's testimony regarding facts about which he did not have personal knowledge, and based solely on statements told to him by eyewitnesses not present at the revocation hearing. Ash's counsel claimed that the officer's testimony violated Mr. Ash's Sixth and Fourteenth Amendment right to confront and cross-examine adverse witnesses. (Tr. at 34-35, 44.)

The hearing officer found against Mr. Ash on all counts. This decision was based on the testimony of Officer Shepke, the arrest report (which contained the hearsay statements of alleged eyewitnesses), and hospital records relating to

treatment of the victim to the incident. (See Petition at 9.) Based on these findings, the hearing officer recommended that Mr. Ash be incarcerated until the expiration of his sentence, approximately 102 months. (Tr. at 52.)

The recommendation of the hearing officer resulted in the revocation of Mr. Ash's parole on September 4, 2003 and he was sentenced as recommended.

## II. LEGAL ANALYSIS

### A. Jurisdictional Analysis

Before this Court can consider the merits of the Petitioner's claim, the Court must determine whether it has jurisdiction to entertain said petition. *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868). The current action has been brought under 28 U.S.C. §§ 2241 and 2243. 28 U.S.C. § 2241(a) states that "[w]rits of habeas corpus may be granted by ... the district courts and any circuit judge within their respective jurisdiction." The Respondent argues that the present petition should have been brought under 28 U.S.C. § 2254, the habeas provision applicable to criminal defendants detained pursuant to a judgement of a state court. (Opposition at 1.) § 2254 states that relief may be sought by "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the constitution or laws or treaties of the United States." There is no dispute that the district court would have jurisdiction over this case if filed under § 2254. Thus, the Respondent's claims are based on a pure technicality. The Respondent does not contest the court's jurisdiction to consider Mr. Ash's habeas claim, it is only contesting the statutory provision used by the Petitioner to invoke this Court's jurisdiction. Although a technicality, this argument warrants careful consideration. The Respondent cites *Madley v. United States Parole Commission*, · 278 F.3d 1306

(D.C.Cir.2002) for its assertion that a prisoner held pursuant to a state court action, if he wishes to seek relief in the federal courts, must do so pursuant to 28 U.S.C. § 2254, not §§ 2241 nor 2243. The government's reliance on *Madley* for this broad assertion is incorrect. In *Madley*, the Court of Appeals considered the limitations of habeas review by appellate courts where no certificate of appealability (COA) had been issued by the trial court. *See Id.*, 278 F.3d at 1308. The Court's decision does not affect the district court's ability to grant habeas relief for state court defendants under § 2241. In fact, this circuit has held that individuals incarcerated pursuant to action by the Superior Court for the District of Columbia may seek federal habeas relief pursuant to § 2241 despite a state court habeas avenue for relief—D.C.Code § 16–1901. *Blair–Bey v. Quick*, · 151 F.3d 1036, 1042–1047 (D.C.Cir.1998).

The government also challenges the Petitioner's current action on the ground that he has not exhausted his state court remedies, which the government asserts is a prerequisite to federal court habeas review. (Opposition at 2.) The Respondent's position is belied by the history and purpose of the exhaustion requirement. *See Gant v. Reilly*, 224 F.Supp.2d 26 (D.D.C.2002). In the present case, as with *Gant*, the Petitioner is challenging actions by the United States Parole Commission, a federal agency. In finding that a review of actions by the United States Parole Commission is tantamount to judicial scrutiny of a federal entity, "this court is compelled to conclude that it is the proper forum to exercise jurisdiction over this particular habeas corpus petition." *Id.*, 224 F.Supp.2d at 40. This Court finds no reason to depart from the well reasoned opinion in *Gant*, and hold that the Petitioner need not pursue his claim first in the

Superior Court of the District of Columbia as the Respondent urged.

██ Lastly, although not argued by the parties, the Court considers whether the Court has jurisdiction to entertain this petition given that the Defendant is no longer in the territorial jurisdiction of this Court. Traditionally, a federal court has jurisdiction to entertain a petition for habeas corpus relief only if directed against the "warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, —— U.S. ——, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004)(internal citations omitted). In the present case, the immediate custodian of Wilbur Ash is the warden of the Lee United States Penitentiary in Bennington Gap, Virginia. One important exception to this 'immediate custodian rule' is that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Id.*, 124 S.Ct. at 2721, *Ex Parte Endo*, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944). The Petitioner has listed Fred Figueroa, the warden of the Correctional Treatment Facility in Washington, D.C. as one Respondent. At the time this petition was filed, the Petitioner was being held at CTF. Thus, this petition was directed at the Petitioner's immediate custodian and, per *Ex Parte Endo*, this Court retains jurisdiction despite the Petitioner having been moved to another jurisdiction.

## B. Petitioner's Confrontation Claim

The Petitioner brought the current action alleging that his rights to confront and cross-examine adverse witnesses at the parole revocation hearing had been violated. (Motion at 10.) Factually, there is no dis-pute. The Petitioner's parole was revoked based solely on hearsay testimony contained in a police report.

In assessing the Petitioner's claim, the Court finds it beneficial to begin with an analysis of the three primary cases that guide the analysis.

### (1) Morrissey v. Brewer

The seminal case discussing the rights of criminal defendants in parole revocation hearings is *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Morrissey*, the petitioners claimed that because their parole was revoked without a hearing, they were deprived of due process. *Id.* Because the petitioners were state criminal defendants, the central question for the Court was "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." *Id.*, 408 U.S. at 472, 92 S.Ct. 2593. Thus the Court had two distinct issues to resolve. The first was to define the rights afforded criminal defendants in parole revocation hearings and the second was to determine whether state criminal defendants are entitled to the same constitutional protections as federal defendants via the Due Process Clause of the Fourteenth Amendment.

██ Although a defendant at a parole revocation hearing does not benefit from the full panoply of rights available to a defendant in a criminal prosecution, nonetheless, he is entitled to certain minimum requirements of due process. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At a "minimum," these rights include: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and

cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) written statements by the fact finders as to the evidence relied on and reasons for revoking parole." *Id.*

The Court in *Morrissey* is explicit that the "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)" is a "minimum requirement of due process" to be afforded criminal defendants in parole revocation hearings. *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593.

These "few basic requirements," the Court stated, "should not impose a great burden on a State's parole system." *Id.*, 408 U.S. at 490, 92 S.Ct. 2593.

■ Although a criminal defendant at a parole revocation hearing is entitled to the rights quoted above, the Court cautioned that "there is no thought to equate this second stage of a parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.*, 408 U.S. at 489, 92 S.Ct. 2593. Thus, a reasonable reading of *Morrissey* is that criminal defendants in parole revocation proceedings are entitled to certain rights equal to, or perhaps more, but certainly not less, than the rights listed explicitly in *Morrissey*.

### (2) *Crawford v. Jackson*

In *Crawford v. Jackson*, 323 F.3d 123 (D.C.Cir.2003), the question for the Court was whether the use of an uncorroborated police investigative report containing hearsay evidence in a parole revocation hearing violated a criminal defendant's due process

rights. Citing *Morrissey*, the Court stated that "[r]eliance on hearsay in parole revocation proceedings is not per se impermissible." *Crawford v. Jackson*, 323 F.3d at 128. To be admissible, however, the Court held that the evidence had to be sufficiently reliable. *Id.* Among the factors that the Court considered as indicia of reliability include: (1) level of detail, (2) whether the defendant's own testimony corroborated parts of the report, (3) whether the report was corroborated by factors both internal and external to the report, and (4) whether the defendant had an opportunity at the hearing to contest the hearsay with contradictory testimony and if he had failed to do so. *Id.*, 323 F.3d at 130. In adopting the rationale of several other federal circuits, the Court held that courts generally should examine "the reliability of the particular hearsay evidence, condemning reliance on it when the court reaches a negative evaluation." *Id.* at 129.

Thus, were this Court to follow the holding in *Crawford v. Jackson*, the Court would need to assess the reliability of the Officer Shepke's police report to determine whether its introduction at the parole revocation hearing violated the Petitioner's due process rights.

### (3) *Crawford v. Washington*

In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court questioned whether a state court's use of judicially determined 'reliable' hearsay evidence in a criminal prosecution violated the Confrontation Clause. The Court held in the affirmative, and in so doing, abandoned the 'reliability' tests established by the lower federal and state courts. *See Id.*, 124 S.Ct. at 1371–1372. The Court's decision applied specifically to cases in which the criminal defendant was entitled to the protections of the Sixth Amendment's Confrontation Clause and did not consider its decision vis-a-vis pa-

role revocation proceedings. In defining the subjective, and often conflicting conclusions made by various Courts in assessing reliability, the Court noted that some courts have found hearsay testimony to be particularly reliable because it was "detailed" while other courts have found it particularly reliable because it was "fleeting." *Id.*, 124 S.Ct. at 1371.

Furthermore, the Court expressly overruled *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), stating "reliability is an amorphous, if not entirely subjective, concept." *Crawford v. Washington*, 124 S.Ct. at 1371. "The unpardonable vice of the *Roberts* test," according to the Court, "is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* The Court further stated that the "constitution prescribes a procedure for determining the reliability of testimony in criminal trials, and we, no less than the state courts, lack authority to replace it with one of our own devising." *Id.*

### (4) *Analysis*

The federal courts are split with regard to whether *Crawford v. Washington* is binding precedent for parole revocation hearings. *See United States v. Jarvis*, 94 Fed.Appx. 501 (9th Cir.2004)(holding that the right to confrontation and thus *Crawford v. Washington*, applied to parole revocation hearings); *United States v. Martin*, 382 F.3d 840 (8th Cir.2004)(holding that the Sixth Amendment right to confrontation did not exist in parole revocation hearings); *See also United States v. Taveras*, 380 F.3d 532 (1st Cir.2004); *See also United States v. Barraza*, 318 F.Supp.2d 1031 (S.D.Cal.2004). Most recently, the 2nd Circuit held that *Crawford v. Washington* does not apply to parole revocation hearings because by its text, the Sixth Amendment is limited to "criminal prosecutions." *United States v. Aspinall*, 389 F.3d 332 (2d

Cir.2004). That Court also cited to *Morrissey* for the proposition that " 'revocation of parole is not part of a criminal prosecution." *Id.*

After a careful review of the previous cases, as well as *Morrissey, Crawford v. Jackson,* and *Crawford v. Washington,* this Court holds that a criminal defendant in a parole revocation hearing is entitled to confrontation and that the contours of that right are dictated by the Supreme Court's recent formulation in *Crawford v. Washington.* This determination is made for the following reasons.

### (a) Reconciling *Morrissey* with *Crawford v. Washington*

*Morrissey* states both that a defendant in a parole revocation hearing is entitled to confront adverse witnesses and that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489–490, 92 S.Ct. 2593. These two statements must be reconciled in light of the Court's more recent holding in *Crawford v. Washington.* A parole revocation hearing, according to *Morrissey*, includes the right to confront and cross-examine adverse witnesses, which, according to *Crawford v. Washington*, cannot include the introduction of hearsay testimony, regardless of its judicially determined reliability, a procedure permitted by *Morrissey* (the process should allow for "other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 490, 92 S.Ct. 2593). In fact, the Court expressly declares affidavits as a type of testimonial evidence subject to a right to confrontation. *Crawford v. Washington*, 124 S.Ct. at 1364. The only unequivocal pronouncement regarding parole revocation hearings is that the right to confrontation is a mini-

mum requirement of due process. *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593. *Morrissey* does state, however, that parole revocation hearings should not be equated with criminal prosecutions and that defendants in the former are not entitled to the full set of rights enjoyed by defendants in the latter. 408 U.S. at 489, 92 S.Ct. 2593. ("We do not reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent.") This caveat follows immediately after an exposition of the minimum rights that *must* be afforded a criminal defendant in parole revocation hearings. *Id.* Thus, the Court is calling attention to the difference between criminal prosecutions and parole revocation proceedings not to cast doubt upon the rights it explicitly held are applicable in both, but to suggest that there may be other rights (e.g., to appointed counsel if indigent) or procedural safeguards not discussed, which may or may not be equally available. To use the language differentiating the two types of criminal proceedings as an invitation to disregard *Morrissey's* previous exposition of the "minimum requirements of due process" would be incongruous.

### (b) Confrontation: Sixth Amendment vs. Fourteenth Amendment

The circuits that have held that *Crawford v. Washington* does not affect the rights provided to criminal defendants in parole revocation proceedings base their decision on a distinction between confrontation borne from the Sixth Amendment (and clearly the subject of *Crawford v. Washington*) and confrontation as a component of "due process" as expressed in *Morrissey v. Brewer.*

One such circuit characterized the due process right to confrontation expressed in *Morrissey* as a "limited due process right to confront and cross-examine adverse witnesses." *Martin,* 382 F.3d at 844. In distinguishing confrontation afforded criminal defendants in parole hearings, the federal District Court for the Southern District of California has stated that "the right to confrontation in a supervised release revocation hearing is a due process, not a Sixth Amendment right." *Barraza,* 318 F.Supp.2d at 1033. According to that Court, the "Sixth Amendment Confrontation Clause by its own terms only applies to 'criminal prosecutions'" and that because *Morrissey* "specifically noted that 'the revocation of parole is not part of a criminal prosecution,' it is difficult to conclude that *Morrissey* was a Sixth Amendment case." *Id.,* 318 F.Supp.2d at 1035.

Acknowledging the context in which *Morrissey* was decided, a review of a state court proceeding, this Court cannot agree with these decisions. *Morrissey* discussed confrontation in the context of 'due process' because that case concerned state court action, and thus, any rights applicable to the defendants in that case would exist solely via incorporation of constitutional rights through the Due Process clause of the Fourteenth Amendment and not because the Court envisioned an alternative form of confrontation different from that referenced in the Sixth Amendment. The Court has expressly incorporated the rights provided in the Sixth Amendment to the states via the Due Process clause of the Fourteenth Amendment. *Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)(holding that because the Sixth Amendment provides rights that are "basic to our adversary system of criminal justice, they are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal court of the States.") These rights, the Court stated, include the right to confrontation. *Id.* Therefore, the right to confront adverse witnesses, expressed as a minimum requirement of due process in *Morrissey* can mean only the

right to confrontation as it is found in the Confrontation Clause of the Sixth Amendment.

### (c) Alternative Right to Confrontation

Even if the holding in *Crawford v. Washington* does not apply necessarily to parole revocation hearings via *Morrissey*, this Court would need to define 'confrontation' as stated by the *Morrissey* court as a minimum requirement of due process. The cases which hold that Sixth Amendment confrontation doesn't apply do not discuss, in light of their decision, the contours of the right to "confront and cross-examine adverse witnesses" as stated in *Morrissey*. *See United States v. Aspinall*, 389 F.3d 332, *See United States v. Martin*, 382 F.3d 840, *See United States v. Barraza*, 318 F.Supp.2d 1031.

In *Crawford v. Washington*, the Court discusses at length the etymology of the right to confrontation and restates its importance in the fundamental fairness of criminal trials in our nation. *See generally Crawford*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. Nowhere in that thorough review does the Court mention, let alone hint the existence of multiple types of, or alternative definitions for, confrontation. In fact, the Court begins with a detailed discussion of the right to confrontation as it existed at common law. *Id.*, 124 S.Ct. at 1359–1363. If this Court were to formulate an alternative right to confrontation, one based on notions of 'due process' rather than borne from the Sixth Amendment, this Court would inevitably turn to the same sources as cited in *Crawford v. Washington* and would no doubt end with the same notion of confrontation. In short, this Court cannot conceive of a more thorough, or accurate accounting of the scope and meaning of confrontation than that expounded in *Crawford v. Washington*, even assuming it was appropriate for it to do so.

### (d) Judicial Determinations of Reliability

Were this Court to determine that *Crawford v. Washington* did not apply, the Court still could not follow *Crawford v. Jackson* because, while not being expressly overruled, its underlying rationale has been undermined. When the Supreme Court eschewed admissibility of hearsay evidence based on the imprecision of judicially created tests for reliability, it cast doubt upon the legitimacy of the reliability test set forth in *Crawford v. Jackson*. Indeed one of the factors relied upon by this Circuit as an indicium of reliability was the level of detail of the hearsay statement, (*Crawford v. Jackson*, 323 F.3d at 130) a practice flatly rejected in *Crawford v. Washington*. Thus, although not expressly overruled, the analysis and precedential value of *Crawford v. Jackson* is in doubt. Furthermore, the Court stated that parole revocation decisions must be made with "verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey*, 408 U.S. at 484, 92 S.Ct. 2593. It is difficult to imagine how this can be achieved by an "amorphous" and "unpredictable" test of reliability. *See Crawford v. Washington*, 124 S.Ct. at 1370. For this Court to assess the police officer's hearsay report based on "reliability factors" set forth in *Crawford v. Jackson*, would be tantamount to this Court ignoring the binding nature, constitutional analysis and utter rebuke of "reliability" factors, set forth in *Crawford v. Washington*.

### III. CONCLUSION

For the reasons stated above, this Court finds that criminal defendants in parole revocation proceedings are entitled to confront and cross-examine witnesses and

that the scope of that right is as has been expounded in *Crawford v. Washington*.

■ The *Crawford v. Washington* opinion itself supports this conclusion. In a discussion of confrontation and reliability, and the virtues of the first and the vice of the second, the Court noted that the right to confrontation is "a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner." *Id.*, 124 S.Ct. at 1370. Under such a formulation, it becomes exceedingly difficult to imagine an alternative definition of confrontation. That definition would have to provide a procedural rather than a substantive protection. *See Id.* An "unpredictable" test of reliability would not be an acceptable method for ensuring its satisfaction. *Id.* And it would need to be based, in some fashion, on a traditional notion of 'due process.' *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593. The only definition of confrontation that can withstand those restrictions is the definition adopted by *Crawford v. Washington.* No judicial formulation can do better, and this Court need not try.

This Court need not postulate those instances, discussed in *Morrissey*, in which testimonial evidence, not admissible at a criminal trial would nevertheless be admissible in a parole revocation hearing. As previously noted, *Morrissey's* distinction between parole revocation hearings and criminal prosecutions does not contemplate a confrontation different in *kind*, from Sixth Amendment confrontation. Perhaps this caveat places limits, however, on the *scope* of confrontation required by due process. Conceivably a situation may arise in which a defendant's parole is revoked and the evidence presented at the hearing consists both of evidence for which the defendant was not afforded an opportunity to confrontation as well as evidence for which he was afforded an opportunity to confrontation. Suffice it to say that when un-confronted testimonial evidence comprises the *sole* basis of a decision to revoke a criminal defendant's parole, thereby implicating his liberty interest, that defendant has been afforded no opportunity for confrontation. As *Morrissey* expressly directs that such a defendant be afforded, as a minimum requirement of due process, the right to confront adverse witnesses (a practice defined in *Crawford v. Washington*), a hearing void of any such opportunity is surely constitutionally defective.

Because the Petitioner's parole was revoked solely based on the hearsay testimony of a police officer and a police report, which was also based exclusively on hearsay evidence, this Court finds that the Petitioner's constitutional due process right to confrontation of adverse witnesses has been violated.

For these reasons, the Petitioner's Habeas Corpus Petition is **GRANTED.** The custodian of this Defendant is **ORDERED** to provide him with a new hearing that affords him his right to confront and cross-examine any adverse witnesses or to release him from custody.

**SO ORDERED.**